**Below is a Memorandum Decision of the Court.**

_Mary Jo Heston_
**Mary Jo Heston**
**U.S. Bankruptcy Judge**
**(Dated as of Entered on Docket date above)**

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON AT TACOMA

In re:

DON EUGENE BRAVO,

Debtor.

Case No. 17-43092

**MEMORANDUM DECISION**
**(Not for Publication)**

## INTRODUCTION

This matter came for hearing before the Court on January 18, 2018, on the Debtor's objection to claim number 1 of AllianceOne Receivables Management Inc. ("ARMI").[1] Debtor Don Eugene Bravo ("Bravo" or "Debtor") filed an objection to the claim of ARMI in accordance with 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007.[2] The objection alleges that ARMI's claim is false and misleading because the original judgment amount ("Principal Penalty") portion of the claim is incorrect and creates a perception that a significant portion of the claim is nondischargeable. Bravo alleges that the majority of the Principal Penalties, once broken out,

---

[1] ARMI's proof of claim identifies its name as "AllianceOne Management Receivables Inc." instead of "AllianceOne Receivables Management Inc." All other documents in the record, including the creditor's response, indicate that the correct name is actually "AllianceOne Receivables Management Inc." Therefore, the Court will refer to the creditor with the abbreviated designation of ARMI in recognition of the correct name.

[2] Unless otherwise indicated, all chapter, section and rule references are to the Federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

MEMORANDUM DECISION - 1

are actually dischargeable court costs and not criminal fines. The total nondischargeable portion of the claim is important to Bravo's confirmed Chapter 13 plan ("the Plan"), which separately classifies such nondischargeable portion for full payment prior to other unsecured creditors. (Amd. Plan at XII.1, ECF No. 25).

**BACKGROUND**

Prior to confirming the Plan, Bravo filed this objection to ARMI's claim. The ARMI claim totals $12,306.46, comprised of three separate judgments assigned to ARMI for collection by the Pierce County Superior Court through the Superior Court Clerk (collectively "Pierce County"). ARMI provided the three separate assignments from Pierce County as attachments to the proof of claim for judgments in cases filed during 2000 (theft of a motor vehicle), 2009 (attempting to elude a pursuing police vehicle), and 2012 (malicious mischief in the second degree). Each assignment provided to ARMI by Pierce County includes a breakdown with separate categories for the Principal Penalty, assigned interest, interest, collection fees, and total obligation less payments received. According to the Pierce County assignment orders, Bravo owed Pierce County Principal Penalties of $825.56 for the 2000 judgment, $2,916.58 for the 2009 judgment, and $1,300 for the 2012 judgment for a total of $5,042.14.[3] ARMI's claim provides a breakdown of the obligations on the date of filing based on the assignments as follows:

| Civil Filing Fee | $0.00 |
|---|---|
| Penalty | $5,013.61 |
| Assigned Interest | $1,794.74 |

---

[3] ARMI subsequently revised this amount down to $5,006.99 upon the filing of its response in recognition that Pierce County improperly included $6.62 of assigned interest in the Principal Penalty portion of the assignment order for the 2000 Judgment.

MEMORANDUM DECISION - 2

| Collection Fee | $1,596.94 |
| --- | --- |
| Interest | $3,901.17 |
| Other Fees | $0.00 |
| Other Fees Payment | ($0.00) |
| Total Amount Claimed | $12,306.46 |

Although there are small discrepancies in how the overall amount is broken out, such as the $28.53 difference between the assigned judgment totals and the Principal Penalty amount in ARMI's claim, Bravo and ARMI appear to agree on the total claim amount of $12,306.46, although they do not agree on the Principal Penalty portion.[4] However, Bravo contends that the Principal Penalty portion in the Pierce County assignment orders is not only incorrect, but also false and misleading because some of the amounts do not constitute either "restitution" or "criminal fines" within the meaning of the discharge exception in § 1328(a)(3). According to Bravo, the nondischargeable portion of ARMI's claim totals only $2,888.80 made up of $1,370 of unpaid Crime Victim Assessments and $1,518.80 of unpaid restitution. Bravo argues that the Court should disallow the ARMI claim because it is false and an abuse of the bankruptcy process, thus Bravo seeks entry of an order determining that only $2,888.80 of the claim is nondischargeable.[5]

---

[4] The Court is unable to determine the exact amount of the Principal Penalty portion of the claim given the discrepancy in the figures provided by ARMI. As discussed *infra*, it is not necessary for the Court to resolve the accounting issue given ARMI's voluntary reduction of the amount claimed nondischargeable and Bravo's lack of argument as to the accuracy of specific amounts provided by ARMI.

[5] Normally such nondischargeability determinations require an adversary complaint under Fed. R. Bank. P. 7001(6). However, a party may waive this non-jurisdictional requirement so long as the court affords all the protections of an adversary proceeding. *See In re Zolner*, 249 B.R. 287, 292 (N.D. Ill. 2000); *Ung v. Boni (In re Boni)*, 240 B.R. 381, 386 (9th Cir. BAP 1999) (describing minimum requirements for waiver of adversary requirements but declining to decide if waiver was permissible). Given the limited nature of the legal questions presented by the motion, the lack of factual disputes, and the opportunity for further briefing provided, the Court will consider the matter without requiring the filing of an adversary complaint.

Following Bravo's objection, ARMI voluntarily reduced the nondischargeable portion of its claim from $5,013.61 to $4,638.10. The remaining ARMI claim consists of the Principal Penalty amounts identified in the Pierce County assignment orders less certain fees automatically included in the judgments by Pierce County pursuant to RCW 9.94A.780 and RCW 36.18.190.[6] ARMI does not concede that its claim is false or misleading or that there is any basis to disallow any portion of the claim based on such allegations. Following argument the Court took the matter under advisement and requested that Bravo file copies of the three judgments as part of the record.[7]

**ANALYSIS**

In most circumstances, federal courts should "vindicate and protect federal rights and federal interests . . . in ways that will not unduly interfere with the legitimate activities of the States." *Younger v. Harris*, 401 U.S. 37, 44-45 (1971). Even in bankruptcy proceedings, the United States Supreme Court has long held a "deep conviction that federal bankruptcy courts should not invalidate the results of state criminal proceedings." *Kelly v. Robinson*, 479 U.S. 36, 47 (1986). Bravo's objection raises two separate issues for the Court to consider. First, is ARMI's claim a "false statement" or "misleading" because it includes in the Principal Penalty amounts that Bravo contends are actually dischargeable costs of prosecution. (Claim Obj. 4:16-18, ECF No. 28). Second, what portion of the $4,638.10 ARMI claim is a nondischargeable "criminal fine" or "restitution" obligation pursuant to § 1328(a)(3).

---

[6] Because ARMI voluntarily consented to the dischargeability of accrued interest and mandatory fees imposed pursuant to RCW 9.94A.780 and RCW 36.18.190, this decision does not address the dischargeability of these amounts. The following cases may be of some guidance on these issues. *See In re Egbo*, 551 B.R. 869, 874-75 (D. Or. 2016) (interest on nondischargeable obligation is also not discharged); *State v. Cunningham*, 116 Wn. App. 946, 955, 69 P.3d 358 (Wash. 2003) (imposition of interest is part of the state's criminal sentence).

[7] Following the hearing, Bravo provided copies of two of the judgments but the oldest judgment is still not part of the record. *See* ECF Nos. 33, 34, and 35.

MEMORANDUM DECISION - 4

A. <u>Is the ARMI claim false or misleading?</u>

Bravo's argument for disallowing ARMI's claim is that Pierce County and ARMI provided false or misleading information by filing a claim that included in the Principal Penalty amounts for DNA database fees, criminal filing fees, Crime Victim Assessments, and other similar charges without separately identifying these costs and fees. According to Bravo, the inclusion of these amounts provides a false perception that portions of the penalty are nondischargeable criminal fines instead of dischargeable costs of prosecution. As discussed *infra*, the Court disagrees that all of these charges fall outside of the exception to discharge for "restitution, or a criminal fine, included in a sentence on debtor's conviction of a crime." § 1328(a)(3). Even if the Court did agree that all of the amounts complained of were dischargeable, Bravo has provided no basis for disallowing the ARMI claim as a false or misleading statement simply for failing to break out the Principal Penalty amounts further.

Bankruptcy Rule 3001 specifies the basic requirements for filing a claim as follows: 1) the filed claim should exist in writing and conform substantially to Official Form B 410; 2) the creditor or creditor's authorized agent must execute the proof of claim; and 3) if the claim is based on a writing, a copy of the writing should be filed with the claim. Fed. R. Bankr. P. 3001. The ARMI claim is in writing, executed by the creditor's authorized agent, and includes as attachments the orders of assignment from Pierce County. What concerns Bravo is that the amounts in the original sentencing orders for the 2000, 2009, and 2012 judgments differ from the Principal Penalty amount in the proof of claim.

In its response and at argument, ARMI explained that the Principal Penalty not only includes the amounts specifically identified in the original sentencing orders, but also consists of statutory fees for "Offender Intake Supervision" and collection costs added to the felony convictions by the Court Clerk pursuant to RCW 9.94A.780 and RCW 36.18.180. (Dec. of Tricia Reed, ECF No. 31). ARMI further represented that Pierce County considers these amounts part

of the original criminal judgment and therefore includes the amounts in the Principal Penalty portion of the assignment orders provided to ARMI for collection. As an example, the 2009 judgment provides for a Principal Penalty of $2,916.58, consisting of the following amounts:[8]

| | |
|---|---|
| Restitution | $1,518.80 |
| Crime Victim Assessment | $500 |
| DNA Database Fee | $100 |
| Court Appointed Attorney Fees and Defense Costs | $400 |
| Criminal Filing Fee | $200 |
| Total | $2,718.80 |

Pursuant to RCW 9.94A.780, the Court Clerk added an additional $200 in intake fees, for a total obligation of $2,918.80 designated as the "Principal Penalty." According to ARMI's response, Bravo made total payments of $37.47, of which $30.75 was applied to amounts characterized as part of the Principal Penalty. Therefore, Bravo actually owed $2,888.05 on the penalty portion of the claim as of the bankruptcy petition date. Adding up these amounts for all three judgments, ARMI's response identifies a total Principal Penalty of $5,006.99, slightly different from the $5,013.61 amount set forth in ARMI's proof of claim. ARMI subsequently reduced the nondischargeable portion of its claim to $4,638.10, consisting of the amounts in the original criminal sentencing orders less payments and certain fees, and excluding the statutory assessments automatically added to the criminal sentence under either RCW 9.94A.780 or RCW 36.18.180.[9] The total amount claimed has not changed from the $12,306.46 asserted when ARMI filed its proof of claim.

---

[8] ARMI provided the breakdown to the Court in its response for purposes of contesting the Debtor's objection.
[9] ARMI did not include the accrued interest as part of the $4,638.10, although the general rule is that if the underlying debt is not dischargeable neither is the interest on that debt. *See In re Egbo*, 551 B.R. 869, 874-75 (D.

Bravo appears to concede the total liability of $12,306.46 in this case, and Bravo's belief that a portion of the Principal Penalty amount is dischargeable does not render the claim false or misleading. Neither Washington State nor federal bankruptcy law define the "Principal Penalty" of a state court judgment. Bravo has provided no reason why the Court should not rely on Pierce County's representation of what constitutes the Principal Penalty of its own judgment. Further, as discussed *infra*, the analysis required to determine the nondischargeable portion of the claim is nuanced and not subject to clear decisional authority.

Although the Court finds that ARMI's claim is neither false nor misleading, the Court does agree with Bravo that ARMI should provide additional detail about the Principal Penalty portion of the claim in future cases in order to permit debtors, their counsel, and the Court to effectively assess the components of the claim without unnecessary cost. A sample of the information the Court requests ARMI provide with future claims is attached as Exhibit A.[10] Although Pierce County considers items like the victim assessments and DNA fees as part of the Principal Penalty, a breakdown of those amounts is still necessary to afford debtors a fair opportunity to understand the claim and evaluate whether an objection is warranted.

B. <u>What amount of the remaining $4,638.10 ARMI claim is nondischargeable?</u>

The primary issue presented by Bravo's claim objection is whether the entire Principal Penalty portion of the ARMI claim (as reduced in creditor's response) is a nondischargeable criminal fine or criminal restitution obligation under § 1328(a)(3).

Section 1328(a)(3) provides that a discharge upon completion of all payments under a plan of reorganization does not discharge any debt "for restitution, or a criminal fine, included

---

Or. 2016); *State v. Cunningham*, 116 Wn.App. 946, 955, 69 P.3d 358 (Wash. 2003) (imposition of interest is part of the state's criminal sentence).

[10] ARMI's counsel indicated during oral argument that providing additional information as that in Exhibit A was likely feasible for ARMI's client, Pierce County.

MEMORANDUM DECISION - 7

in a sentence on the debtor's conviction of a crime." § 1328(a)(8). Relying on the *Ryan* decision from the Ninth Circuit Bankruptcy Appellate Panel ("BAP"), Bravo argues that this Court may parse through the original criminal sentences to determine that only $2,888.80 of the ARMI claim is nondischargeable. *Ryan v. United States (In re Ryan)*, 389 B.R. 710, 720 (9th Cir. BAP 2008). ARMI has already consented to limiting the nondischargeable portion of its claim to $4,638.10, consisting of the Principal Penalty in the original judgments less statutory costs and payments made. However, Bravo desires a further reduction of the nondischargeable portion as follows:

- <u>2000 Judgment</u>-
  Nondischargeable: $370 ($500 Crime Victim Assessment less claimed payments). [11]
  Dischargeable: $110 in court costs and $200 in attorney's fees.

- <u>2009 Judgment</u>-
  Nondischargeable: $2,018 (restitution of $1,518.80 plus $500 Crime Victim Assessment).
  Dischargeable: $100 DNA Database Fee, $400 Court-Appointed Attorney Fees and Defense Costs, and $200 Criminal Filing Fee.

- <u>2012 Judgment</u>-
  Nondischargeable: $500 for the Crime Victim Assessment.
  Dischargeable: $100 DNA Database Fee, $400 Court-Appointed Attorney Fees and Defense Costs, and $200 Criminal Filing Fee.

Bravo's sole argument for the Court to segregate the various components of the original criminal sentence is that under *Ryan* the term "criminal fine" does not include any costs of prosecution. *Ryan*, 389 B.R. at 720. In Bravo's view, the penalty amounts attributable to anything other than restitution and the Crime Victim Assessment are merely dischargeable costs of prosecution. The Court disagrees.

---

[11] Bravo also disputes both the total balance of the Principal Penalty amount and whether the payments he did make were properly credited. Despite the opportunity for additional briefing, Bravo provided no evidence to defeat the *prima facie* validity of the claim.

MEMORANDUM DECISION - 8

In *Ryan*, the debtor filed a Chapter 13 shortly after receiving a Chapter 7 discharge for the purpose of dealing with significant sums owed to the United States from the debtor's conviction for possession of an unregistered firearm. *Ryan*, 389 B.R. at 712. The bankruptcy court found the costs nondischargeable, but the BAP disagreed under the facts and circumstances of the case, finding there was a clear distinction between "fines" and "costs" within the federal statutes. The sentencing court had ordered the debtor to pay a fine, restitution, and additional amounts under a separate federal statute clearly describing costs of prosecution. The costs were added pursuant to a federal statute providing that on conviction for any non-capital offense, "the court may order that the defendant pay the costs of prosecution." 28 U.S.C. § 1918(b). After considering the history of both § 523(a)(7) and § 1328(a)(3), the BAP ultimately determined that when Congress added the term "criminal fine" to the exceptions to a Chapter 13 discharge it chose not to include the "costs of prosecution." *Id.* at 718. Regardless of whether the Court agrees with the BAP's analysis in *Ryan*, the distinction between criminal fines and costs of prosecution is more complex when confronted with the Washington State criminal scheme.

   1. *State law is relevant in determining whether an amount constitutes a "criminal fine" for purposes of nondischargeability.*

Bravo and ARMI dispute the applicability of the *Ryan* case given that Bravo was convicted and sentenced under Washington State law. A state definition or label generally is not dispositive of whether a claim is dischargeable because such a determination is a question of federal bankruptcy law. "[Federal] law controls the categorization of any obligation under the Bankruptcy Code, priority versus non-priority or dischargeable versus nondischargeable, regardless of any labels affixed under state law." *Wilson v. Cumis Ins. Soc. Inc. (In re Wilson)*, 252 B.R. 739, 743 (8th Cir. BAP 2000) (relying on federal law to determine if plea of guilty constituted a conviction under § 1328(a)(3)). However, what constitutes a "criminal fine" under

the Bankruptcy Code remains an unsettled question given the lack of any definition in the Code itself or clear decisional authority.

Since *Ryan* was decided in 2008, there is a dearth of case law addressing the meaning of the terms in § 1328(a)(3). In this Court's view, in enacting § 1328(a)(3), Congress intended to balance two different goals: limit interference with criminal prosecutions, and preserve monetary penalties against criminals while retaining a more expansive discharge in Chapter 13. History indicates that Congress has frequently sought to exclude more criminal fines and penalties from the discharge instead of less. *See Ryan*, 389 B.R. at 717-18 (discussing case and legislative history of the exception for criminal fines). The majority opinion in *Ryan* interpreted this history to demonstrate Congress' desire to preserve a distinction between a Chapter 7 and Chapter 13. *Ryan*, 389 B.R. at 717. The BAP reasoned that if Congress wanted the same exceptions to discharge to apply in both Chapters 7 and 13, "it had language ready at hand to achieve that result in the language of § 523(a)(7), with the expansive gloss of *Kelly*, and it did not use it." *Ryan*, 389 B.R. 717.[12]

One of the differentiating features between what many courts view as a "criminal fine," rather than a cost under *Ryan,* is the understanding that certain pecuniary obligations serve the purpose of punishment and deterrence of criminal behavior. *See Warfel v. City of Saratoga (In re Warfel)*, 268 B.R. 205, 213 (9th Cir. BAP 2001) (civil judgment for restitution was nondischargeable under § 523(a)(7) because purpose of the original restitution award was penal in nature). For example, Washington State courts distinguish between constitutionally impermissible imprisonment based on a "run-of-the-mill debtor-creditor relationship" and legitimate confinement stemming from court contempt orders or criminal proceedings. *State v.*

---

[12] The United States Supreme Court held in *Kelly* that in a Chapter 7 case, criminal restitution obligations were excepted from a debtor's discharge under § 523(a)(7) based in part on the concern that to hold otherwise would result in an "unseemly" requirement that state prosecutors submit state criminal judgments to federal bankruptcy court review. *Kelly*, 479 U.S. at 48-49 & n 8.

MEMORANDUM DECISION - 10

*Barklind*, 87 Wn.2d 814, 820 (1976) (quoting *Decker v. Decker*, 52 Wn.2d 456, 458 (1958)); *Smith v. Whatcom County Dist. Court*, 147 Wn.2d 485, 492-93 (2002) (court may imprison defendant for failure to pay criminal liabilities upon proper procedure and inquiry into whether non-payment was intentional). The aforementioned cases rely on the difference between civil liabilities and obligations to pay as part of a criminal sentence. The former primarily defrays costs of the parties and the latter serves a punitive or rehabilitative goal.

   *2. Monetary obligations imposed on criminals under Washington State law.*

   Under Washington State law, a Legal Financial Obligation ("LFO") is

> a sum of money that is ordered by a **superior court of the state of Washington** for payment of restitution to a victim, statutorily imposed crime victims compensation fee, court costs, a county or interlocal drug fund, court-appointed attorneys' fees and costs of defense, fines, and any other legal financial obligation that is assessed **as a result of a felony conviction**.

RCW 9.94A.030(31) (emphasis added). The Washington criminal statute defines a "criminal fine" as "a specific sum of money ordered by the sentencing court to be paid by the offender to the court over a specific period of time." RCW 9.94A.030(27). Failure to pay an LFO is not without consequences as the court can take a variety of collection actions, including revocation of parole. *State v. Woodward*, 116 Wn. App. 697, 702 (2003). In fact, a court may order a noncomplying offender confined for not more than 60 days for each violation. RCW 9.94A.634(3)(c). The state's action in revoking parole would likely fall outside the protection of the automatic stay. *Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1087 (9th Cir. 2000).

   Washington State differentiates between discretionary and mandatory LFOs, the latter requiring no individualized inquiry into the defendant's current or future ability to pay. *State v. Blazina,* 182 Wn.2d 827, 838 (2015) (the trial court must make an individualized inquiry into a defendant's current and future ability to pay before imposing discretionary LFOs under RCW

10.01.160 [Court Costs and Fees]). Mandatory LFOs include: (1) the $500 Victim Assessment Fee required by RCW 7.68.035(1)(a); (2) the $100 DNA Collection Fee required by RCW 43.43.7541; and (3) the $200 Criminal Filing Fee required by RCW 36.18.020(2)(h). *State v. Clark*, 191 Wn. App. 369, 373 (2015) (Victim Penalty Assessment Fee, DNA Collection Fee, and Criminal Filing Fee); *State v. Lundy*, 176 Wn. App. 96, 102-04 (2013) (Victim Penalty Assessment Fee, DNA Collection Fee, and Criminal Filing Fee). Unlike mandatory LFOs, if a court intends to impose discretionary LFOs as a sentencing condition, such as court costs and fees under RCW 10.01.160, it must consider the defendant's present and future ability to pay. *State v. Lundy*, 176 Wn. App. 96, 103–04 (2013).

Washington courts also have distinguished between "fines" and "costs," in the context of appeals. *State v. Clark*, 191 Wn. App. 369, 375-76 (Wash. 2015). "The definition of 'costs' in RCW 10.01.160(2) does not include 'fines.' Accordingly, we hold that a fine is not a court cost. . . ." *Clark*, 191 Wn. App. at 376. The *Clark* court relied on language from an earlier Washington State Supreme Court decision wherein that court determined that "a fine is a sum of money exacted, as a pecuniary punishment, from a person guilty of an offense, while costs are but statutory allowances to a party for his expenses incurred in an action. The former is, in its nature at least, a penalty, while the latter approached more nearly a civil debt." *Bergman v. State*, 187 Wash. 622, 700 (1936).

Based on existing state case law, in this Court's opinion, Washington State designed its mandatory LFO scheme to punish offenders through the imposition of mandatory obligations as a form of penalty on conviction of a felony. Therefore, the Crime Victim Assessments, DNA Database Fees, and Criminal Filing Fees imposed on Bravo are not merely costs of prosecution. These mandatory amounts fall within the exception to discharge in § 1328(a) since they are at least partially punitive in nature and Bravo's non-payment risks his incarceration. The fact that the mandatory LFOs may defray some of the costs of prosecution does not render those debts

dischargeable if otherwise penal in nature. *See State Bar of California v. Taggart (In re Taggart)*, 249 F.3d 987, 991 (9th Cir. 2001) (leaving open the possibility that a cost may actually form part of the punishment); *State Bar of Cal. v. Findley (In re Findley)*, 593 F.3d 1048, 1054 (9th Cir. 2010) (determining costs imposed in bar disciplinary proceeding nondischargeable under § 523(a)(7) after California amended statute).

The only remaining amounts at issue are those attributable to court-appointed attorney fees and defense costs. Although Washington State courts appear to categorize attorney fees as "costs" under the Washington statutes, these amounts are also set forth in the actual criminal judgments. *Clark*, 191 Wn. App. at 374 (describing court-appointed counsel fees as a discretionary LFO). Federal courts are reluctant to interfere with a state's criminal process for fear that to do so would "require state prosecutors to submit the judgment of their criminal courts to federal bankruptcy courts." *Kelly*, 479 U.S. at 48-49. Even where classified as a cost, the Ninth Circuit Court of Appeals has indicated that if the state statutory scheme evinces an intent to impose the amount as part of the punishment, such costs may well be penal in nature. *Taggart*, 249 F.3d at 991. Despite the title of "costs," as evidenced by the Petition for Hearing to Determine Noncompliance with Condition or Requirement of Sentence, the Pierce County Prosecuting Attorney evidently understood that the payment of these amounts was a condition of probation for the 2000 Judgment. (ECF No. 35).[13] The 2009 and 2012 Judgments similarly impose small amounts of defense costs.

In at least two instances, the sentencing court specifically elected to impose the "costs" against Bravo in the sentencing orders, which indicates that the criminal court's intent was to punish Bravo for his criminal conduct by imposing all amounts contained in the criminal sentence. Perhaps more compelling, Washington State has enacted a comprehensive scheme

---

[13] The 2000 judgment is not included in the record, only a court notice of violation referencing the amounts in the prior judgment made in request for a hearing.

MEMORANDUM DECISION - 13

for the imposition of costs, including appeal procedures. *See* RCW 10.73.160(4); *Blazina*, 182 Wn.2d at 838-39. This Court will not engage in a collateral attack on the award of defense costs, especially where the Debtor has provided no evidence of an attempt to seek modification or clarification from the state court. *See In re Limbaugh*, 194 B.R. 488, 495 (Bankr. D. Or. 1996) (debtor should have first petitioned state court for reduction of criminal restitution payments before attempting to confirm a plan specially classifying amounts). The Court finds that $4,638.10 of the ARMI claim is not dischargeable and is subject to payment pursuant to the terms of Bravo's confirmed plan. Therefore, the Court overrules Bravo's objection to the claim of ARMI.

/ / / End of Memorandum Decision / / /

EXHIBIT A

| CREDITOR | ACCOUNT 27475339 DESCRIPTION | DATE | PRINCIPAL | RESTITUTION | RCW 9.94A.780 COURT COST | RCW 36.18.190 COURT COST | PAYMENTS | ASSIGNED INTEREST | INTEREST | COURT & GARNISH COST/FEE | TOTAL BALANCE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| BRAVO, DON EUGENE | | | | | | | | | | | |
| PIERCE COUNTY SUPERIOR COURT | 09-1-01656-1 | 07/27/09 | $1,200.00 | | | | | | | | $1,200.00 |
| PIERCE COUNTY SUPERIOR COURT | 09-1-01656-1 | 07/27/09 | | $1,518.80 | | | | | | | $2,718.80 |
| | PAYMENT | 10/29/10 | | | | | ($1.00) | | | | $2,717.80 |
| | PAYMENT | 05/05/11 | | | | | ($0.70) | | | | $2,717.10 |
| PIERCE COUNTY SUPERIOR COURT | 09-1-01656-1 | 05/31/11 | | | $100.00 | | | | | | $2,817.10 |
| | PAYMENT | 06/16/11 | | | | | ($0.52) | | | | $2,816.58 |
| | INTEREST | 03/08/12 | | | | | | $847.16 | | | $3,663.74 |
| PIERCE COUNTY SUPERIOR COURT | 09-1-01656-1 | 03/08/12 | | | | $882.82 | | | | | $4,546.56 |
| | PAYMENT | 04/16/13 | | | | | ($0.51) | | | | $4,546.05 |
| | PAYMENT | 12/31/13 | | | | | ($22.73) | | | | $4,523.32 |
| | PAYMENT | 01/16/14 | | | | | ($1.00) | | | | $4,522.32 |
| PIERCE COUNTY SUPERIOR COURT | 09-1-01656-1 | 01/31/14 | | | $100.00 | | | | | | $4,622.32 |
| | PAYMENT | 01/31/14 | | | | | ($1.13) | | | | $4,621.19 |
| | PAYMENT | 04/07/15 | | | | | ($0.08) | | | | $4,621.11 |
| | PAYMENT | 04/29/15 | | | | | ($3.00) | | | | $4,618.11 |
| | PAYMENT | 04/30/15 | | | | | ($1.29) | | | | $4,616.82 |
| | PAYMENT | 05/19/15 | | | | | ($0.31) | | | | $4,616.51 |
| | PAYMENT | 06/01/15 | | | | | ($0.67) | | | | $4,615.84 |
| | PAYMENT | 07/28/15 | | | | | ($0.67) | | | | $4,615.17 |
| | PAYMENT | 08/19/15 | | | | | ($1.57) | | | | $4,613.60 |
| | PAYMENT | 09/01/15 | | | | | ($0.47) | | | | $4,613.13 |
| | PAYMENT | 09/30/15 | | | | | ($0.12) | | | | $4,613.01 |
| | PAYMENT | 11/05/15 | | | | | ($0.67) | | | | $4,612.34 |
| | PAYMENT | 12/28/15 | | | | | ($0.04) | | | | $4,612.30 |
| | PAYMENT | 07/29/16 | | | | | ($0.07) | | | | $4,612.23 |
| | PAYMENT | 02/13/17 | | | | | ($0.67) | | | | $4,611.56 |
| | PAYMENT | 03/31/17 | | | | | ($0.25) | | | | $4,611.31 |
| | INTEREST | 08/16/17 | | | | | | | $2,441.02 | | $7,052.33 |
| SUBTOTALS: | | | $1,200.00 | $1,518.80 | $200.00 | $882.82 | ($37.47) | $847.16 | $2,441.02 | $0.00 | |
| GRAND TOTAL: | | | | | | | | | | | $7,052.33 |

EXHIBIT A